Office of the Attorney General
State of Texas



DAN MORALES
ATTORNEY GENERAL

March 21, 1996

The Honorable Patrick J. Fleming
Parker County Attorney
One Courthouse Square
Weatherford, Texas 76086

Opinion No. DM-380

Re:   Whether the Parker County Hospital District is responsible for the payment of health care costs for inmates in the Parker County Jail who are "eligible residents" of the hospital district under chapter 61 of the Health and Safety Code and related questions   (RQ-863)

Dear Mr. Fleming:

You ask several questions concerning the origin of payment for health care assistance of inmates of the Parker County Jail. Specifically, you ask whether, in particular situations, the district, the jail, or some other entity is responsible for the payment of health care costs of county jail inmates. We assume you do not inquire about prisoners held for another jurisdiction pursuant to a contract between Parker County and the other jurisdiction. We will begin our analysis by examining statutes pertinent to the Parker County Hospital District (the "hospital district").

"Pursuant to the authority granted by the provisions of Section 9 of Article IX of the Constitution of the State of Texas," the legislature authorized the creation of the hospital district in 1965. *See* Act of March 10, 1965, 59th Leg., R.S., ch. 35, § 1, 1965 Tex. Gen. Laws 93, 93, *amended by* Act of May 28, 1975, 64th Leg., R.S., ch. 444, § 1, 1975 Tex. Gen. Laws 1186, 1187; Act of May 31, 1981, 67th Leg., R.S., ch. 472, 1981 Tex. Gen. Laws 2081, 2081-82; Act of April 27, 1989, 71st Leg., R.S., ch. 66, 1989 Tex. Gen. Laws 378, 378-80; Act of May 25, 1991, 72d Leg., R.S., ch. 705, § 37, 1991 Tex. Gen. Laws 2520, 2529. Section 1 of the hospital district's enabling legislation establishes the hospital district's boundaries as coextensive with the boundaries of Parker County and provides the hospital district "such rights, powers and duties as" the enabling act prescribes. Act of March 10, 1965, 59th Leg., R.S., ch. 35, § 1, 1965 Tex. Gen. Laws 93, 93.

The enabling act establishes as one of the hospital district's duties "full responsibility for providing medical and hospital care for . . . needy inhabitants . . ." of the hospital district. *Id.* § 2, at 94; *see also* Health & Safety Code § 286.082(a) (requiring hospital district created by voter approval to provide, without charge, care and treatment of indigent patient). Moreover, section 20 of the enabling legislation provides as follows:

> After creation of the hospital district, neither Parker County,
> Texas, nor any city or town therein shall thereafter issue bonds or

> other evidences of indebtedness for . . . medical treatment of indigent persons within such boundaries, nor shall such political subdivisions levy taxes for . . . such purposes. The said hospital district shall assume full responsibility for the operation of all hospital facilities for the furnishing of medical and hospital care of indigent persons within its boundaries.

Act of March 10, 1965, 69th Leg., R.S., ch. 35, § 20, 1965 Tex. Gen. Laws 93, 99.

The hospital district's enabling act mirrors article IX, section 9 of the Texas Constitution, which authorizes the legislature to provide for the creation of hospital districts so long as "any district so created . . . assume[s] full responsibility for providing medical and hospital care for its needy inhabitants." After the creation of a hospital district, article IX, section 9 states, "no other municipality or political subdivision shall have the power to levy taxes or issue bonds or other obligations . . . for providing medical care within the boundaries of the district."

In addition to the hospital district's enabling act and article IX, section 9 of the constitution, two statutes are relevant to your questions: the Indigent Health Care and Treatment Act, Health and Safety Code chapter 61, and Code of Criminal Procedure article 104.002. Chapter 61 of the Health and Safety Code pertains to the provision of medical care to "eligible" individuals, *i.e.*, individuals who meet the income and resources requirements established by or in accordance with chapter 61. Health & Safety Code § 61.002(4). A hospital district must provide to a resident of the hospital district the health care services required under the Texas Constitution and the hospital district's enabling act. *Id.* § 61.055. (Similarly, section 286.082 of the Health and Safety Code requires a hospital district created by voter approval to provide, without charge, necessary medical care and treatment to an indigent patient. *See* Act of March 10, 1965, 59th Leg., R.S., ch. 35, § 3, 1965 Tex. Gen. Laws 93, 94).

With regard to an eligible individual who does not reside within the service area of a hospital district, a county is responsible for the provision of health care assistance to the individual if the individual resides within the county and has no other adequate source of payment. Health & Safety Code § 61.023(a); *see also id.* § 61.022 (requiring county to provide health care assistance to eligible county residents). A county may, however, establish a less restrictive standard of eligibility. *Id.* § 61.023(b).

Thus, whether a hospital district or a county bears the cost of an eligible individual's health care assistance depends primarily on the individual's place of residence. "[A] person is presumed to be a resident of the governmental entity in which the person's home or fixed place of habitation to which the person intends to return after a temporary absence is located. . . . [I]f a person's home or fixed place of habitation is located in a hospital district, the person is presumed to be a resident of that hospital district." *Id.* § 61.003(a). The Department of Health is the arbiter of any disputes between a provider of assistance and a governmental entity or hospital district regarding an individual's residence. *Id.* § 61.004(a).

Article 104.002 of the Code of Criminal Procedure specifically pertains to the provision of medical, dental, or health-related services to prisoners confined in a county jail.

> (a) Except as otherwise provided by this article, a county is liable for all expenses incurred in the safekeeping of prisoners confined in the county jail or kept under guard by the county. . . .

> (b) If a county incurs expenses for the safekeeping of a prisoner from another county, the sheriff shall submit to the county judge an account of expenses incurred by the county for the prisoner. The county judge shall approve the amount he determines is a correct statement of the expenses and sign and date the account.

> (c) The county judge shall submit to the commissioners court of the county for which the prisoner was kept, at a regular term of the court, his signed statement of the account described by Subsection (b). If the commissioners court determines that the account is in accordance with the law, it shall order the county treasurer to issue to the sheriff of the county submitting the statement a draft in an amount approved by the court.

> (d) A person who is or was a prisoner in a county jail and received medical, dental, or health related services from a county or a hospital district shall be required to pay for such services when they are rendered. If such prisoner is an eligible county resident as defined in Section 61.002, Health and Safety Code, the county or hospital district providing the services has a right of subrogation to the prisoner's right of recovery from any source, limited to the cost of services provided. A prisoner, unless the prisoner fully pays for the cost of services received, shall remain obligated to reimburse the county or hospital district for any medical, dental, or health services provided, and the county or hospital district may apply for reimbursement in the manner provided by Chapter 61, Health and Safety Code. A county or hospital district shall have authority to recover the amount expended in a civil action.[1] [Footnote added.]

In Attorney General Opinion DM-225 this office considered whether the Karnes County Jail or the Karnes County Hospital District is liable for the costs of health care assistance rendered to inmates of the Karnes County Jail who are eligible for such assistance under chapter 61 of the Health and Safety Code. Attorney General Opinion

---

[1] *See* Act of April 25, 1995, 74th Leg., R.S., ch. 76, § 3.22, 1995 Tex. Sess. Law Serv. 458, 469.

DM-225 (1993) at 1. The opinion first addresses the responsibility of the Karnes County Hospital District for eligible individuals who reside in the hospital district:

> [S]ection 61.055 of the Indigent Health Care and Treatment Act . . . provides that a hospital district must provide the health care services and treatment required by the constitution and the district's enabling legislation. . . . [T]he Karnes County Hospital District has been created in Karnes County and is coextensive with the county. . . . The district's enabling act and the constitution require the district to provide medical care for its needy residents . . . . Prior opinions of this office have consistently opined that a hospital district's duty to provide medical care for their indigent residents extends to such residents when they are held in county jails. Attorney General Opinions JM-643 (1987); JM-487 (1986); H-703 (1975). Thus, it is our opinion that the Karnes County Hospital District is responsible for the medical costs of an indigent jail inmate who is a resident of that district.

*Id.*

The opinion next determines that, for an eligible inmate residing in another hospital district or the service area of a public hospital,[2] that hospital district or public hospital is liable for the costs of health care assistance rendered to the inmate. *Id.* at 2. The opinion expressly does not consider, however, the responsibility of costs for health care assistance rendered to inmates who are not residents of Texas. *Id.* at 3.

The opinion finally contemplates an indigent inmate of the Karnes County Jail who does not reside in Karnes County, nor within any hospital district or public hospital service area. *Id.* at 2. Construing section 61.022 of the Health and Safety Code together with article 104.002(d) of the Code of Criminal Procedure, the opinion determines that the inmate's county of residence is ultimately responsible for the costs of health care assistance provided to such an inmate. *Id.* at 3.

---

[2] A public hospital is "a hospital owned, operated, or leased by a governmental entity," unless the hospital is owned, operated, or leased by a municipality with a population of less than 5,500; was leased prior to January 1, 1981, by a municipality that, at the time of the lease, had no legal obligation to provide indigent health care; or was established under Health and Safety Code section 265.031. Health & Safety Code §§ 61.002(11), .051(b). A public hospital must furnish health care assistance to an eligible resident of its service area if the resident meets:

> (1) the basic income and resources requirements established by the [Texas Department of Health] under Sections 61.006 and 61.008 and in effect when the assistance is requested; or

> (2) a less restrictive income and resources standard adopted by the hospital serving the area in which the person resides.

*Id.* § 61.052(a).

Attorney General Opinion DM-225 resolves some of your questions. You first ask whether the hospital district or the county is responsible for the payment of health care costs, "including outpatient and inpatient care, dental care and pharmaceutical costs," for indigent prisoners in the Parker County Jail who are residents of Parker County. Because the boundaries of the hospital district are coextensive with Parker County, a resident of the county is a resident of the hospital district. Under the hospital district's enabling act, the hospital district must assume "full responsibility for providing medical and hospital care for its needy inhabitants . . . ." Act of March 10, 1965, 69th Leg., R.S., ch. 35, § 2, 1965 Tex. Gen. Laws 93, 94; *see also* Tex. Const. art. IX, § 9. The hospital district's duties extend to its eligible residents housed in the county jail. *See* Attorney General Opinion DM-225 (1993) at 1. Accordingly, the hospital district either must provide such inmates necessary medical and hospital care or recompense the providers of the care.[3] *See* Act of March 10, 1965, 69th Leg., R.S., ch. 35, § 2, 1965 Tex. Gen. Laws 93, 93-94; Health & Safety Code §§ 61.055, 286.082(a); Attorney General Opinion DM-225 (1993) at 1.

Whether the "medical and hospital care" the hospital district must provide includes outpatient and inpatient care, dental care, and pharmaceutical costs is a matter left to the discretion of the hospital district's governing body. Attorney General Opinion DM-37 (1991) at 5 (quoting Attorney General Opinion JM-1052 (1989) at 4).

> Certainly, the Texas Constitution and statutory law require hospital districts to provide at least essential medical services to their indigent residents. Whether a hospital district must provide a specific service, however, is a matter that the legislature has chosen by default[4] to leave to the governing body of a hospital district.

*Id.* (footnote added).

You ask whether the hospital district or Parker County is responsible for the payment of health care costs incurred by an eligible inmate of the Parker County Jail who resides in another county. As we determined in Attorney General Opinion DM-225, the inmate's county of residence is ultimately responsible for the costs of health care assistance provided to the inmate if the inmate resides outside the bounds of a hospital district or public hospital service area. Attorney General Opinion DM-225 (1993) at 3.

---

[3]Section 61.005(a) of the Health and Safety Code authorizes a hospital district to request an eligible resident receiving health care assistance "to contribute a nominal amount toward the cost of the assistance." The district may not, however, deny assistance, or reduce the amount of assistance it renders, to an eligible resident who cannot or will not contribute. Health & Safety Code § 61.005(b).

[4]We note that, in 1985, the electorate approved the adoption of article IX, section 9A of the Texas Constitution. *See* Attorney General Opinion JM-858 (1988) at 3. Article IX, section 9A authorizes the legislature to establish by statute "the health care services a hospital district is required to provide, the requirements a resident must meet to qualify for services, and any other relevant provisions necessary to regulate the provision of health care to residents." Thus far, the legislature has not enacted such a statute.

Likewise, if the eligible inmate resides in another hospital district, the inmate's home hospital district is liable to the Parker County Hospital District for all health care services the home hospital district is required to provide, as well as additional services the home hospital district regularly provides.

If, on the other hand, the inmate resides within the service area of a public hospital, we believe the Parker County Hospital District must look to two entities for reimbursement. A public hospital is required to provide only inpatient and outpatient hospital services. *See* Health & Safety Code §§ 61.028(a)(1), .054(a). Thus, the inmate's home public hospital is liable to the Parker County Hospital District only for the cost of such services rendered to the inmate. The public hospital may be liable for other health care services if it regularly provides such services to its eligible residents. *See id.* § 61.054(b), (c). The county of the eligible inmate's residence is liable for all health care costs not covered by the public hospital (assuming the county is required to provide such services under section 61.028(a) of the Health and Safety Code or regularly provides such services under section 61.028(b)).

The statutes do not indicate how a provider of health care assistance is to receive reimbursement from the governmental entity that is ultimately liable for an eligible inmate's health care costs. If the hospital district provides health care services to an eligible inmate of the Parker County Jail who resides in another county, hospital district, or public hospital service area, we believe the hospital district may bill the governmental entity or entities that is ultimately liable for the costs. Because you do not inquire as to the propriety of any other methods, we do not address other possible methods.

You ask whether the hospital district or Parker County is responsible for the payment of all health care costs of an eligible prisoner in the county jail who resides in another state.[5] As we mentioned, Attorney General Opinion DM-225 expressly reserves this question. Under article 104.002(d) of the Code of Criminal Procedure, the hospital district must require an inmate to pay for medical, dental, or health related services at the time the services are rendered. If, however, the inmate is "an eligible county resident as defined in Section 61.002, Health and Safety Code," the hospital district has a right of subrogation to the prisoner's right of recovery from any source. Code Crim. Proc. art. 104.002(d). The hospital district may apply for reimbursement as permitted by Health and Safety Code chapter 61, the Indigent Health Care and Treatment Act.

We believe chapter 61 of the Health and Safety Code pertains only to the costs of medical treatment for Texas residents. Nothing in chapter 61 appears to contemplate an indigent resident of another state. For example, section 61.003(a) of the Health and Safety Code presumes a person to reside in "the governmental entity" in which the

---

[5]You do not ask, and we do not, therefore, consider, which entity is liable for the costs of health care assistance rendered to an eligible inmate who is a citizen of another country. *But see* Attorney General Opinion JM-1021 (1989) at 4-5 (suggesting that Indigent Health Care and Treatment Act does not exclude illegal immigrants from coverage if they meet residency and eligibility requirements).

person's home is located. "Governmental entity" is defined to include a county, municipality, or other political subdivision *of the state*. In addition, section 61.002(4) requires the Department of Human Services to mandate that every applicant for health care inform the department of, among other things, the applicant's "county of residence." Nothing in section 61.007 requires the Department of Human Services to obtain information regarding the applicant's state of residence. If the legislature had considered that an indigent applicant may be from another state, we believe the legislature would have provided in these two sections, or elsewhere, for a county, hospital district, and public hospital to determine the applicant's state of residence. Accordingly, we believe article 104.002(d) of the Code of Criminal Procedure provides a hospital district a right of subrogation to an inmate's right of reimbursement only when the inmate is an eligible resident of Texas. When an indigent inmate resides in another state, section 104.002(d) permits a hospital district to seek reimbursement only from the inmate.

You ask whether the hospital district may establish an indigent health care policy that provides fewer medical services than the amount of medical services an indigent prisoner is entitled to under federal or state laws. Under section 61.055 of the Health and Safety Code, the hospital district must provide all health care services required under the Texas Constitution and the hospital district's enabling act. As we stated above, the hospital district must provide, at the least, all essential medical services to its eligible residents. *See* Attorney General Opinion DM-37 (1991) at 5 (quoting JM-1052 (1989) at 4); *supra* p. 5. If, as you suggest, federal law indeed requires a hospital district to provide additional medical services, the hospital district must provide such services.[6] Whether a hospital district must provide any other, nonrequired services is within the discretion of the hospital district's governing body. *See* Attorney General Opinion DM-37 (1991) at 5 (quoting JM-1052 (1989) at 4); *supra* p. 5.

In a related vein, you ask whether the hospital district may "establish an application for indigent health care that requests so much information that it is impossible for an inmate to complete the application in order to be considered for indigent health care services." You also ask who determines an inmate's eligibility to receive health care assistance under chapter 61 of the Health and Safety Code, and whether the decision maker may "do so in such a fashion that deprives the inmate of health care as required by law." We will answer these questions together.

The hospital district makes the determination as to whether a particular applicant for health care assistance is eligible for such assistance. Section 286.082(b) of the Health and Safety Code requires a hospital district annually to adopt an application procedure to determine eligibility for assistance. *See also* Health & Safety Code § 61.053(a) (requiring hospital district to adopt application procedure). Section 286.082(c) authorizes the hospital district administrator to "have an inquiry made into the financial circumstances of"

---

[6]You did not cite any particular federal laws that may require a hospital district to provide certain medical services.

the applicant patient and a relative of the patient who is legally responsible for the patient's support. *See also* Act of March 10, 1965, 59th Leg., R.S., ch. 35, § 18, 1965 Tex. Gen. Laws 93, 99 (requiring administrator of hospital district to inquire into circumstances of patient residing within hospital district).

Although a hospital district need not comply with the eligibility standards and application, documentation, and verification procedures the Department of Health has adopted pursuant to section 61.006 of the Health and Safety Code, the hospital district may use the standards and procedures as guidance in developing its own standards and procedures. *See* Attorney General Opinion JM-858 (1988) at 3; *see also supra* note 4 (describing adoption of Texas Constitution article IX, section 9A). The hospital district also may refer to the list of information an applicant for assistance from a county must provide. *See* Health & Safety Code § 61.007;[7] 40 T.A.C. § 15.607(c).

A hospital district may not adopt eligibility standards or application procedures that are inconsistent with its enabling act. Moreover, we do not believe a hospital district may establish standards or procedures that circumvent the hospital district's constitutional duty to provide "medical and hospital care for its needy inhabitants." *See* Tex. Const. art. IX, § 9. Whether particular standards or procedures circumvent a hospital district's constitutional duty is a question involving the resolution of fact issues; such a question is inappropriate to the opinion process. *See, e.g.,* Attorney General Opinions DM-98 (1992) at 3, H-56 (1973) at 3, M-187 (1968) at 3, O-2911 (1940) at 2.

You ask which governmental entity is responsible for medical costs incurred by an indigent inmate in the county jail who is a state prisoner. Article 104.002 of the Code of Criminal Procedure refers only to a prisoner in a county jail, without distinguishing

---

[7]Section 61.007 of the Health and Safety Code obligates the Department of Health to promulgate a rule requiring an applicant to provide at least the following information:

(1)    the applicant's full name and address;

(2)    the applicant's social security number, if available;

(3)    the number of persons in the applicant's household, excluding persons receiving AFDC, SSI, or Medicaid benefits;

(4)    the applicant's county of residence;

(5)    the existence of insurance coverage or other hospital or health care benefits for which the applicant is eligible;

(6)    any transfer of title to real property that the applicant has made in the preceding 24 months;

(7)    the applicant's annual household income, excluding the income of any household member receiving AFDC, SSI, or Medicaid benefits; and

(8)    the amount of the applicant's liquid assets and the equity value of the applicant's car and real property.

between those prisoners who are prisoners of the county or prisoners of the state. *See* Attorney General Opinions JM-730 (1987) at 2, JM-743 (1987) at 2. Furthermore, we find no statute that expressly encumbers the state with the responsibility of medical care for state prisoners housed in county jails. *See* Gov't Code § 493.001; *cf.* Attorney General Opinion JM-743 (1987) at 2 (construing statutory predecessor to Gov't Code § 493.001, *amended by* Act of March 25, 1991, 72d Leg., R.S., ch. 16, § 10.01(a), 1991 Tex. Gen. Laws 244, 274). Consequently, if the hospital district renders health care assistance to an eligible state prisoner housed in the county jail, the hospital district is paid for the services in accordance with article 104.002(d) of the Code of Criminal Procedure and chapter 61 of the Health and Safety Code.

You ask whether Parker County may levy and collect taxes for the costs of medical care for eligible prisoners in the Parker County Jail. As we have stated above, the hospital district's enabling act prohibits the county from issuing "bonds or other evidences of indebtedness for . . . medical treatment of indigent persons within [the] boundaries" of the hospital district, *see* Act of March 10, 1965, 69th Leg., R.S., ch. 35, § 20, 1965 Tex. Gen. Laws 93, 99; in addition, the enabling act prohibits the county from levying taxes for such purposes, *id.* Furthermore, article IX, section 9 of the Texas Constitution deprives any other political subdivision, including a county, of "the power to levy taxes or issue bonds or other obligations . . . for providing medical care within the boundaries of the district." Tex. Const. art. IX, § 9.

The hospital district's responsibility to provide medical and hospital care extends only to residents of the hospital district. *See* Tex. Const. art. IX, § 9; Health & Safety Code § 61.055; Act of March 10, 1965, 69th Leg., R.S., ch. 35, § 20, 1965 Tex. Gen. Laws 93, 99. Thus, neither the enabling act nor article IX, section 9 of the Texas Constitution precludes Parker County from raising revenue, through the collection of taxes, to pay medical costs of eligible inmates who are not residents of the hospital district.[8] *But see* Tex. Const. art. VIII, § 3 (mandating that taxes shall be levied and

---

[8]A county may levy taxes only in accordance with the county budget. *See* Local Gov't Code § 111.010(a). Section 111.010 of the Local Government Code applies only to a county with a population of 225,000 or less that does not operate under chapter 111, subchapter C of the Local Government Code. Local Gov't Code § 111.001. A county with a population greater than 125,000 may choose to operate under subchapter C. *Id.* § 111.061. Parker County has a population of 64,785. U.S. Department of Commerce, 1990 CENSUS OF POPULATION: GENERAL POPULATION CHARACTERISTICS: TEXAS 3 (1990). Thus, Parker County must operate in accordance with chapter 111, subchapter A, of which section 111.010 is a part.

The enabling act and the constitution also do not appear to prohibit Parker County from issuing bonds to cover the cost of providing health care assistance to inmates of the county jail who reside in other counties. However, a county may issue bonds only if it is constitutionally or statutorily authorized to do so. 35 DAVID B. BROOKS, COUNTY AND SPECIAL DISTRICT LAW § 17.2, at 567-68 (Texas Practice 1989). We are unaware of any provision, constitutional or statutory, that authorizes a county to issue bonds to pay medical costs incurred by eligible inmates of the county jail who reside in another county. *See id.* § 17.4, at 568-70 (and statutes cited therein).

collected for publi : purposes only); *see also id.* art. III, § 52(a) (prohibiting expenditure of public funds for nonpublic purposes).

We question the necessity of raising revenues to cover the costs of providing health care assistance to county jail inmates who do not reside in Parker County, however, because subsection (d) of article 104.002 of the Code of Criminal Procedure appears to allow the provider of medical services to recoup its costs. *See* Hearings on H.B. 2308 Before the House Comm. on County Affairs, 70th Leg. (Apr. 7, 1987) (statement of Dan Smith, Bell County Sheriff) (tape available from House Video/Audio Services Office) (stating that House Bill 2308, which became article 104.002(d) when enacted, provided various methods from reimbursement of medical costs counties pay for county jail inmates).

You finally ask what remedies may be taken against the hospital district or its board, either as a whole or as separate individuals, if the hospital district fails to carry out its constitutional and statutory duty to provide "medical and hospital care for its needy inhabitants."[9]  Tex. Const. art. IX, § 9; Act of March 10, 1965, 69th Leg., R.S., ch. 35, § 2, 1965 Tex. Gen. Laws 93, 93-94.  You list mandamus, criminal prosecution for official misconduct, removal from office, and joining the hospital district in a civil rights action for failure to provide adequate health care to eligible inmates.  Whether a particular remedy is available or appropriate depends on the facts of the particular situation.  The issue is, therefore, fact-based and inappropriate to the opinion process.  *E.g.,* Attorney General Opinions DM-98 (1992) at 3, H-56 (1973) at 3, M-187 (1968) at 3, O-2911 (1940) at 2.

## S U M M A R Y

The Parker County Hospital District must provide necessary medical and hospital care to inmates of the county jail who reside in Parker County.  In the alternative, the hospital district may reimburse the providers of such care.  Whether the medical and hospital care the hospital district must provide includes outpatient and inpatient care, dental care, and pharmaceutical costs is a matter left to the discretion of the governing body of the Parker County Hospital District, except that the hospital district may not provide fewer services than required by law.

With respect to an inmate of the Parker County Jail who resides in another county, outside the boundaries of a hospital district or the service area of a public hospital and who is eligible for health care assistance under chapter 61 of the Health and Safety Code, the

---

[9]You also ask whether, if the hospital district has rendered medical services to a prisoner who is noneligible under chapter 61 the Health and Safety Code, the hospital district should seek payment from that prisoner or the county.  We have pending before us another opinion request, number RQ-685, that considers and will answer that question.

inmate's county of residence is responsible for the costs of health care assistance provided to the inmate. If the inmate resides within the boundaries of another hospital district, that hospital district is responsible to the Parker County Hospital District for the costs of any health care services the home hospital district is required to provide, as well as any additional services the home hospital district regularly provides. If the inmate resides within the service area of a public hospital, the public hospital must reimburse the Parker County Hospital District for the costs of inpatient and outpatient hospital services provided to an eligible inmate of the Parker County Jail, as well as the costs of any other health care assistance the home public hospital regularly provides. Generally, the inmate's county of residence is responsible for the remaining costs of health care assistance.

If the Parker County Hospital District provides health care assistance to an inmate in the Parker County Jail who is eligible for assistance under chapter 61 of the Health and Safety Code and who resides in another county, hospital district, or the service area of a public hospital, the hospital district may bill the governmental entity or entities that is ultimately liable for the costs.

An indigent inmate who resides in another state is ultimately liable for the costs of the medical services he or she has enjoyed. A hospital district may not subrogate itself to the right of an eligible inmate to reimbursement if the inmate resides outside the state.

The Parker County Hospital District must provide to an eligible inmate of the Parker County Jail who is a resident of Parker County all essential medical care. The hospital district also must provide all health care assistance the federal law requires it to provide. Whether a hospital district provides other services is within the discretion of the hospital district's governing body.

In developing its own eligibility standards and application, documentation, and verification procedures, a hospital district may refer for guidance to the standards and application, documentation, and verification procedures the Department of Health has adopted pursuant to Health and Safety Code section 61.006. The hospital district also may refer for guidance to the list of information an applicant for health care assistance from a county must provide, pursuant to Health and Safety Code section 61.007. A hospital district may not adopt eligibility standards or application, documentation, and verification procedures inconsistent with its enabling act, nor may a hospital district establish standards and

procedures that circumvent the hospital district's constitutional duty under article IX, section 9 of the Texas Constitution.

If a hospital district renders health care assistance to an eligible state prisoner housed in the county jail, the hospital district is paid for the services in accordance with Code of Criminal Procedure article 104.002(d) and Health and Safety Code chapter 61.

A county may levy taxes for medical costs incurred by eligible inmates of the county jail who reside in another county if the tax is in accordance with the county budget. The county commissioners court must determine that the imposition of the tax for this purpose serves a public purpose.

Whether a particular cause of action is available or appropriate to protest a hospital district governing board's dereliction of duties depends upon the facts of the situation.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General